10-4588 (L)
Communications Network International, Ltd. V. MCI Worldcom Communications, Inc.

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

-----

August Term, 2011

(Submitted:    January 12, 2012                    Decided: January 24, 2013)

Docket Nos.  10-4588(L), 11-0408(XAP)

-----

In Re:  WORLDCOM, INC.,

*Debtor.*

-----

COMMUNICATIONS NETWORK INTERNATIONAL, LTD.,

*Defendant-Appellant-Cross Appellee,*

v.

MCI WORLDCOM COMMUNICATIONS, INC., f/k/a WORLDCOM TECHNOLOGIES, INC.,

*Plaintiff-Appellee-Cross Appellant.*

-----

B e f o r e :

KATZMANN and LYNCH, *Circuit Judges,* and KAPLAN, *District Judge.**

Plaintiff-Appellee-Cross Appellant MCI WorldCom Communications, Inc., argues

that the district court erred in reopening the time within which Defendant-Appellant-Cross Appellee

---

*

The Honorable Lewis A.  Kaplan, United States District Judge for the Southern District of New York, sitting by designation.

Communication Network International, Ltd., could appeal from certain orders of the district court under Fed. R. App. P. 4(a)(6). We conclude that the district court exceeded the bounds of its discretion in granting relief under Fed. R. App. P. 4(a)(6). The order granting relief under Rule 4(a)(6) is reversed, and CNI's appeal is dismissed as untimely.

Judge Lynch dissents in a separate opinion.


William Mark Mullineaux
ASTOR WEISS KAPLAN & MANDEL, LLP
*Attorney for Appellant-Cross Appellee*
*Communications Network International, Ltd.*

Mark A. Shaiken
Andrew W. Muller
STINSON MORRISON HECKER LLP
*Attorneys for Appellee-Cross Appellant MCI WorldCom Communications, Inc.*


LEWIS A. KAPLAN, *District Judge.*

"[T]he taking of an appeal within the prescribed time is mandatory and jurisdictional."[1] Litigants, moreover, have a responsibility to monitor the docket for the entry of orders they may wish to appeal.[2] Nevertheless, the federal rules provide some assistance to litigants in meeting the necessary deadlines. Federal Rule of Civil Procedure 77(d) requires the clerk to send notice of the entry of judgment to the parties, and Federal Rule of Appellate Procedure 4(a)(6) permits a district court to reopen the time within which to file an appeal in circumstances in which

---

[1] *Bowles v. Russell*, 551 U.S. 205, 209 (2007) (internal quotation marks omitted).

[2] *See U.S. ex rel. McAllan v. City of New York*, 248 F.3d 48, 53 (2d Cir. 2001); *accord Stevens v. Miller*, 676 F.3d 62, 70 (2d Cir. 2012).

the litigant does not receive or receives too late this notice.[3]  But a district court's latitude to relieve litigants of the consequences of failures to file timely notices of appeal is not boundless.

This case presents the question whether the United States District Court for the Southern District of New York properly granted relief under Rule 4(a)(6) to appellant Communications Network International, Ltd. ("CNI") when it claimed that it never received the Civil Rule 77(d) notice and therefore failed to file a timely notice of appeal.  We agree with the district court that CNI met the express preconditions of Rule 4(a)(6).  Nevertheless, we hold that relief under that rule is discretionary and its grant in this case was inappropriate.  The failure to receive Civil Rule 77(d) notice was entirely and indefensibly the fault of CNI's counsel.  Granting relief in such circumstances was at odds with the purposes and structure of the procedural scheme.  Accordingly, we reverse the order granting the motion to reopen and dismiss CNI's appeal as untimely.

I

This litigation has had a long history, but it suffices here to summarize only the critical aspects.

*Bankruptcy Court Proceedings*

WorldCom, Inc., filed for relief under Chapter 11 of the Bankruptcy Act[4] in 2002. MCI WorldCom Communications, Inc. ("MCI"), an affiliate, subsequently commenced an adversary

---

[3]  For convenience, throughout this opinion we refer to Federal Rule of Appellate Procedure 4 as "Rule 4."  In referring to the Federal Rules of Civil Procedure, we write "Civil Rule" followed by the number of the rule.

[4]  11 U.S.C. § 1101 *et seq.*

proceeding against CNI in the United States Bankruptcy Court for the Southern District of New York, in essence to recover for allegedly unpaid telecommunications services. CNI counterclaimed for fraud, intentional nondisclosure, breach of contract, and defamation and sought both compensatory and punitive damages.

On March 13, 2006, the bankruptcy court, insofar as is relevant here, granted MCI's motion for judgment on the pleadings to the extent that it dismissed CNI's counterclaims, but denied the motion to the extent that MCI sought recovery on its claim for unpaid services. It granted CNI's motion to file responses to the unanswered portions of the complaint *nunc pro tunc* and denied CNI's cross motion for judgment on the pleadings on its counterclaims.[5] On July 9, 2007, the bankruptcy court granted MCI's motion for summary judgment to the extent of determining that CNI had breached its contract, but denied it as to the quantum of damages.[6] Some months later, it struck CNI's demand for a jury trial on damages and tried the damages issue, ultimately awarding MCI damages, interest and attorney's fees aggregating more than $2.4 million.[7] CNI appealed from a number of the bankruptcy court's orders, and the appeals were consolidated by the district court.

---

[5]

*MCI WorldCom Commc'ns, Inc. v. Commc'ns Network Int'l, Ltd. (In re WorldCom, Inc.),* No. 02–13533 (AJG), Adv. Proc. No. 04–04338 (AJG), 2006 WL 693370 (Bankr. S.D.N.Y. Mar. 13, 2006), *leave to appeal denied*, 358 B.R. 76 (S.D.N.Y. Dec. 6, 2006).

[6]

Adv. Proc. No. 04-4338, 2007 WL 1989262 (Bankr. S.D.N.Y. July 9, 2007).

[7]

Adv. Proc. No. 04-4338, Dkt. 87 (Bankr. S.D.N.Y. June 18, 2008).

*District Court Proceedings*

The district court affirmed the bankruptcy court's rulings in a memorandum decision on September 14, 2010.[8] Judgment was entered on September 24, 2010.[9] The rulings were entered on the electronic docket, and notice thereof automatically was emailed to CNI's sole counsel of record, Mr. W. Mark Mullineaux, at the email address wmmullineaux@flammlaw.com, which Mr. Mullineaux previously had registered with the clerk's office for the purpose of receiving such notifications on the Southern District of New York's Case Management/Electronic Case Filing ("CM/ECF" or "ECF") system.[10]

In September 2008, Mr. Mullineaux filed a motion to appear *pro hac vice* in this case,[11] which the district court granted in January 2009.[12] Both the motion and the district court's order listed a new email address for Mr. Mullineaux, mmullineaux@astorweiss.com. But Mr. Mullineaux did not revise his contact information or profile on the ECF system to reflect the new email address, and all notifications in the case prior to and including the notice of entry of judgment

---

[8] *Commc'ns Network Int'l, Ltd. v. MCI WorldCom Commc'ns, Inc.,* No. 08 Civ. 7254 (GBD), 2010 WL 3959601 (S.D.N.Y. Sept. 14, 2010).

[9] Dist. Ct. Dkt. 24.

[10] The registration was used in connection with an appearance *pro hac vice* in an earlier and unrelated case in 2006. *See Gammino v. Verizon N.Y., Inc.*, No. 06 Civ. 1506 (RO), Dkt. 8 at 7 (S.D.N.Y. Apr. 12, 2006).

[11] Dist. Ct. Dkt. 16, at 6.

[12] Dist. Ct. Dkt. 22.

were sent to the registered address, wmmullineaux@flammlaw.com.[13]

On November 9, 2010, forty-six days after the entry of the judgment and fifty-six days after the entry of the memorandum decision and order, CNI filed a notice of appeal from both. By then, the time within which to file such a notice of appeal had expired. While the time within which CNI could have moved pursuant to Rule 4(a)(5) for extension of the time within which to file a notice of appeal had not run, CNI did not make such a motion. On that date, district court records reflect, Mr. Mullineaux updated his email address on the ECF system, and all subsequent filings in the case were sent to mmullineaux@astorweiss.com.

MCI then moved in this Court on December 15, 2010, to dismiss the appeal. On December 16, 2010, CNI moved in the district court for an order, pursuant to Rule 4(a)(6), reopening the time within which to file a notice of appeal. It argued such relief was appropriate because its counsel had not received notice of the filing of the memorandum decision or of the judgment at his current email address, mmullineaux@astorweiss.com.

On January 10, 2011, the district court concluded that CNI had not received timely notice of its affirmance of the bankruptcy court's orders under Civil Rule 77(d) because the clerk's office had sent electronic notifications to the registered but outdated email address, that MCI had not demonstrated that service of that order had been effected, and that MCI had shown no prejudice. On this basis, it granted the motion.[14] On February 3, 2011, MCI filed a cross appeal from this ruling. In light of the pendency of the cross appeal, MCI moved on February 7, 2011, to withdraw

---

[13] Dist. Ct. Dkt. 1–24.

[14] Dist. Ct. Dkt. 30.

its motion to dismiss CNI's appeal, and this Court granted the withdrawal on February 23, 2011. CNI's appeal and MCI's cross appeal were consolidated before this Court.

II

Under Rule 4, notices of appeal in most civil cases must be filed within thirty days of the entry of judgment.[15] Civil Rule 77 requires that the clerk, immediately after entering an order or judgment, "serve notice of the entry, as provided in [Civil] Rule 5(b), on each party who is not in default."[16] But this notice is provided "merely for the convenience of litigants."[17] In particular, "[l]ack of notice of the entry does not affect the time for appeal or relieve—or authorize the court to relieve—a party for failure to appeal within the time allowed, except as allowed by Federal Rule of Appellate Procedure 4(a)."[18]

Rule 4(a) has two separate provisions in this regard: Rules 4(a)(5) and 4(a)(6). Rule 4(a)(5) provides that the district court may extend the time for filing a notice of appeal if the party (1) moves no later than thirty days after the time to file prescribed by Rule 4(a) expires and (2) shows "excusable neglect or good cause."[19] The extension may not exceed thirty days after the

---

[15] Fed. R. App. P. 4(a)(1)(A); 28 U.S.C. § 2107(a). For brevity, we omit parallel citations to the statute for the remainder of the opinion.

[16] Fed. R. Civ. P. 77(d). Civil Rule 5 in turn provides the general rules of service under the federal civil rules and enumerates various mechanisms by which service may be effected. *See* Fed R. Civ. P. 5(b)(2).

[17] Fed. R. Civ. P. 77 advisory committee's note to the 1946 amendment.

[18] Fed. R. Civ. P. 77(d)(2).

[19] Fed. R. App. P. 4(a)(5)(A).

prescribed time or fourteen days after the entry of the order granting the extension, whichever is later.[20] Rule 4(a)(5) was introduced in 1967, derived from a predecessor rule introduced in 1946.[21]

In 1991, the rules were amended to create a new form of relief in Rule 4(a)(6). In its current form,[22] the rule provides that the court may reopen the time to file an appeal for fourteen days from the date that it orders reopening if all of the following conditions are satisfied:

> "(A)   the court finds that the moving party did not receive notice under Federal Rule of Civil Procedure 77(d) of the entry of the judgment or order sought to be appealed within 21 days after entry;
>
> "(B)   the motion is filed within 180 days after the judgment or order is entered or within 14 days after the moving party receives notice under Federal Rule of Civil Procedure 77(d) of the entry, whichever is earlier; and
>
> "(C)   the court finds that no party would be prejudiced."[23]

As the advisory committee notes explain, Rule 4(a)(6) was introduced "'to permit district courts to ease strict sanctions . . . imposed on appellants whose notices of appeal are filed late because of their failure to receive notice of entry of a judgment.'"[24] After all, "Rule 4(a)(5) . . . would not aid a litigant who first learned of the entry of judgment more than 30 days after the

---

[20] Fed. R. App. P. 4(a)(5)(C).

[21] *See* Fed. R. App. P. 4 advisory committee's note to the 1967 amendment; 16A CHARLES A. WRIGHT AND ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION AND RELATED MATTERS, § 3950.3 (4th ed. 2008) ["16A Wright & Miller"].

[22] The current text is substantially similar for our purposes to that introduced in 1991.

[23] Fed. R. App. P. 4(a)(6).

[24] *Avolio v. County of Suffolk*, 29 F.3d 50, 53 (2d Cir. 1994) (quoting Fed. R. Civ. P. 77 advisory committee's note to the 1991 amendment); *see also* 16A Wright & Miller § 3950.6 n.4 (noting that "purpose [of Rule 4(a)(6)] is stated more fully in the Committee Note to the conforming amendment to Civil Rule 77(d) than in the Note to Rule 4(a)(6)").

original appeal time ran out" and "[i]t was to the plight of this litigant that the 1991 amendment to Rule 4 was addressed."[25] The advisory committee notes cite a number of cases documenting the "strict sanctions" to which such litigants had been subject.[26] In each of these cases, an appeal was dismissed after the clerk's office did not send—or the clerk's office sent but the appellant did not receive—notice of the entry of judgment within the time necessary to file a notice of appeal.[27] Thus, notwithstanding the general obligation of litigants "to monitor the docket sheet to inform themselves of the entry of orders they wish to appeal,"[28] the 1991 amendment provided a "limited opportunity

---

[25]

16A Wright & Miller § 3950.6.

[26]

Fed. R. Civ. P. 77 advisory committee's note to the 1991 amendment.

[27]

*See Tucker v. Commonwealth Land Title Ins. Co.*, 800 F.2d 1054, 1055–56 (11th Cir.1986) (notice mailed to but not received by appellant, who had delegated checking of docket sheet to employee); *Ashby Enters., Ltd. v. Weitzman, Dym & Assoc.*, 780 F.2d 1043, 1045 (D.C.Cir.1986) (clerk failed to issue notice to appellant); *Hassett v. Far West Fed. Sav. and Loan Ass'n (In re O.P.M. Leasing Servs., Inc.)*, 769 F.2d 911, 913–14 (2d Cir.1985) (decision mailed to but not received by appellant, who failed to check docket sheet because decision was issued faster than expected); *Spika v. Vill. of Lombard, Ill.,* 763 F.2d 282, 283 (7th Cir.1985) (neither party received notice although the docket sheet indicated that such notice was mailed); *Hall v. Cmty. Mental Health Ctr. of Beaver Cnty.*, 772 F.2d 42, 42 (3d Cir.1985) (same); *Wilson v. Atwood Corp. v. Stark*, 725 F.2d 255, 256 (5th Cir. 1984) (*en banc*) (clerk's office failed to notify appellant); *Case v. BASF Wyandotte*, 737 F.2d 1034, 1034–35 (Fed. Cir. 1984) (appellant never received judgment while appellee had); *Hensley v. Chesapeake & Ohio Ry. Co.*, 651 F.2d 226, 227 (4th Cir.1981) (docket sheet indicates that notice was mailed but appellant never received it); *Buckeye Cellulose Corp. v. Braggs Elec. Constr. Co.*, 569 F.2d 1036, 1037 (8th Cir.1978) (clerk's office failed to provide notice to both parties).

In all but one of these cases, the appellant did not learn of the judgment until after the time to file a Rule 4(a)(5) motion had expired, and the issue on appeal was whether Civil Rule 60(b) could afford relief. The exception is our decision in *O.P.M.* We affirmed the district court's denial of appellant's timely Rule 4(a)(5) motion on the ground that the appellant's neglect in failing to learn of the judgment independently was not excusable. *See* 769 F.2d at 917–18.

[28]

*McAllan*, 248 F.3d at 53 (citing *O.P.M.*, 769 F.2d at 916).

for relief in circumstances where the notice of entry of a judgment or order, required to be mailed by the clerk of the district court pursuant to Rule 77(d) of the Federal Rules of Civil Procedure, is either not received by a party or is received so late as to impair the opportunity to file a timely notice of appeal."[29]

## III

We consider first whether CNI met the preconditions for relief enumerated in Rule 4(a)(6), which in this case turns on what it means to "receive notice" under Civil Rule 77(d). CNI submitted below that it did not receive notice by virtue of the clerk's office's transmission of notice of the entry of judgment to Mr. Mullineaux's registered but outdated email address. The district court accepted this contention. On its cross appeal, however, MCI contends that (1) notice was properly served by the clerk's office under Civil Rule 77(d) to CNI because it was sent to the email address provided by Mr. Mullineaux and (2) effective service of notice under Civil Rule 77(d) is all that is required for a party to be deemed to have received notice for purposes of Rule 4(a)(6).

The Seventh Circuit recently rejected the latter proposition in a case involving traditional mailing by post, *Khor Chin Lim v. Courtcall Inc.*[30] As the court there noted, the basic issue is that "Rule 4(a)(6) does not mesh perfectly with Civil Rules 5(b) and 77(d). Rule 4(a)(6) talks of 'receipt' of a document under Rule 77(d); but Rules 77(d) and 5(b) concern 'service' rather

---

[29] Fed. R. App. P. 4 advisory committee's note to the 1991 amendment. On the other hand, the drafters sought also to limit the revisions' potential impact on finality. As the committee noted, "Winning parties are encouraged to send their own notice in order to lessen the chance that a judge will accept a claim of non-receipt in the face of evidence that notices were sent by both the clerk and the winning party." *Id.*; *accord Avolio*, 29 F.3d at 53.

[30] 683 F.3d 378 (7th Cir. 2012).

than receipt."[31] The court observed that although Civil Rule 5(b)(2)(C) indicates that service is complete on mailing,[32] "[t]his rule for what it means to 'serve' a document does not tell us that service equals receipt" and Rule 4(a)(6) could have used the word "serve" rather than "receive" if that is what was meant.[33] The court further stated that Rule 4(a)(6) was "designed to allow a district judge to reopen the time for appeal if notice of the judgment does not arrive—whether the fault lies with the clerk or the Postal Service" and a holding that service equals receipt "would prevent the rule from serving that function."[34] The court finally noted that "no court of appeals has accepted the . . . conclusion that a document is 'received' for the purpose of Rule 4(a)(6) the instant it is 'served' under Rules 5(b) and 77(d)."[35]

Although some district courts have reached a contrary conclusion,[36] the Seventh Circuit's reasoning is persuasive. The drafters of Rule 4(a)(6) were concerned with situations in which notice "either [is] not received by a party or is received so late as to impair the opportunity

---

[31]

*Id.* at 380; *see* Fed. R. Civ. P. 77(d)(1) (requiring clerk to "serve notice of the entry, as provided in Rule 5(b)"); Fed. R. Civ. P. 5(b)(2) (defining when "paper is served").

[32]

*Cf.* Fed. R. Civ. P. 5(b)(2)(E) (similarly providing that service by by electronic means is "complete upon transmission," except with the additional proviso that service "is not effective if the serving party learns that it did not reach the person to be served").

[33]

*Khor Chin Lim*, 683 F.3d at 380.

[34]

*Id.*

[35]

*Id.*

[36]

*See, e.g.*, *Simon v. Scott*, No. 01 Civ. 2179, 2006 WL 42374, at *3 (N.D. Ga. Jan. 6, 2006).

to file a timely notice of appeal"[37] and cited not only cases in which notice was not mailed at all, but also cases in which notice was mailed but never actually received by the party.[38] Moreover, the committee clearly contemplated a distinction between service and receipt when it said that "[w]inning parties are encouraged to send their own notice in order to lessen the chance that a judge will accept a claim of non-receipt in the face of evidence that notices were sent by both the clerk and the winning party."[39] This reading specific to Rule 4(a)(6) does not render superfluous the language in Civil Rule 5(b)(2) that service is complete "upon mailing" or "upon transmission" because Civil Rule 5(b) applies to numerous situations in which the operative question is indeed service and not receipt.[40] Both this court and other courts of appeal have assumed that Rule 4(a)(6) refers to actual

---

[37]

Fed. R. App. P. 4 advisory committee's note to the 1991 amendment.

[38]

*See* Fed. R. Civ. P. 77 advisory committee's note to the 1991 amendment; *Tucker*, 800 F.2d at 1055–56; *O.P.M,* 769 F.2d at 913–14.

[39]

Fed. R. Civ. P. 4 advisory committee's note to the 1991 amendment.

[40]

*See* Fed. R. Civ. P. 5(a) (providing that, *inter alia*, pleadings after the original complaint, discovery papers, and written motions "must be served on every party"); *see also United States v. White*, 980 F.2d 836, 840 n.8 (2d Cir. 1992) (concluding government properly satisfied its obligations under Criminal Rule 49(b), which references the civil rules for service, because paper was mailed prior to service deadline though not received until later); *United States v. Rainey*, 605 F.3d 581, 583 (8th Cir. 2010) (same); *United States v. Severino*, 316 F.3d 939, 946 n.4 (9th Cir. 2003) (*en banc*) (same); *Russell v. City of Milwaukee*, 338 F.3d 662, 665–67 (7th Cir. 2003) (concluding that party was properly served under Civil Rule 25(a)(1), requiring service under Civil Rule 5(b), based on proof of mailing regardless of proof of non-receipt).

The Ninth Circuit has observed that the rule that service is complete upon mailing is one of "administrative convenience" rooted in the difficulty that a serving party would have in certifying receipt; the rules drafters concluded that "the additional benefit from requiring actual receipt wasn't worth the additional inconvenience." *Severino*, 316 F.3d at 946 n.4. Of course, nothing prevents the drafters from making such a policy choice for general Civil Rule 5(b) purposes while requiring that the much narrower question of Rule 4(a)(6) eligibility turn on actual receipt. That is precisely what they have done.

receipt, not simply effective service, and we expressly reach that conclusion today.[41]

Considering the case at hand, the record supports the district court's determination that CNI did not actually receive Civil Rule 77(d) notice by virtue of its having been sent to Mr. Mullineaux's "old email address" from his previous firm.[42] While there very well may be situations in which a party must be deemed to have received a properly served Civil Rule 77(d) notice even though counsel never actually read the notice,[43] this is not such a case. We therefore hold that CNI satisfied the preconditions for relief required by Rule 4(a)(6).[44]

---

[41]

In *Avolio v. County of Suffolk*, 29 F.3d at 53, we noted that the clerk's office mailed notice to all parties under Civil Rule 77(d) but nevertheless stated that "non-receipt of the notice seems to have been established" under Rule 4(a)(6) because plaintiffs averred that they never actually received a copy of the judgment. Similarly, in *U.S. ex rel. McAllan v. City of New York*, 248 F.3d at 52, we observed that Rule 4(a)(6) "precisely addresses" the situation of an appellant who never received notification of the entry of judgment notwithstanding court docket sheets reflecting that copies of the ruling were mailed to the parties. *See also Nunley v. City of Los Angeles*, 52 F.3d 792, 796 (9th Cir. 1995) (holding in context of Rule 4(a)(6) that "[w]hen a movant specifically denies receipt of notice, a district judge must then weigh the evidence and make a considered factual determination concerning receipt, rather than denying the motion out of hand based upon proof of mailing").

[42]

Dist Ct. Dkt. 30 at 3.

[43]

For example, in *Khor Chin Lim,* the notice had been mailed timely to the appellant's address but appellant was out of the country and did not open his mail until he returned months later. After rejecting the proposition that service equaled receipt as a general matter, the Seventh Circuit nevertheless dismissed the appeal, stating that "[n]o authority of which we are aware holds that a litigant may defer 'receipt' of a document by failing to open the envelope containing it." 683 F.3d at 381. Similarly, we would have no doubt that, if notice had been sent to Mr. Mullineaux's proper email address but Mr. Mullineaux simply failed to open his email, he would nevertheless be deemed to have received it. We are not persuaded, however, that the situation presented here is analogous, where the notice was sent to an old email address from when Mr. Mullineaux worked at a different law firm.

[44]

MCI has not challenged on appeal the district court's finding that it would not be prejudiced by allowing the appeal. Nor does it challenge the timeliness of CNI's motion, which was brought well within 180 days of the entry of judgment. *Cf. Benavides v. Bureau of Prisons*,

IV

But, as several courts of appeal have recognized, satisfaction of the three conditions of Rule 4(a)(6) is not the end of the matter. By saying that the district court "may" grant relief, "the rule does not require the district court to grant the relief, even if the requirements are met."[45] If the district court here understood that it had such discretion, its decision gives no indication to that effect—after analyzing the three conditions of Rule 4(a)(6) and finding them satisfied, the district court granted the motion without further discussion.[46] We thus address whether granting the relief was within the court's discretion in the circumstances of this case, and conclude that it was not.

In considering the scope of a district court's discretion under Rule 4(a)(6)—an issue we have had little prior occasion to address—we are guided by an appreciation of the purposes of Rule 4(a)(6) and its positioning in the overall procedural scheme.[47] As discussed above, the purpose

---

79 F.3d 1211, 1214 (D.C. Cir. 1996) (holding that where proper notice is never received, only 180-day deadline applies).

[45] *Matter of Jones*, 970 F.2d 36, 39 (5th Cir. 1992); *accord Kuhn v. Sulzer Orthopedics, Inc.*, 498 F.3d 365, 369 (6th Cir. 2007); *Arai v. Am. Bryce Ranches, Inc.*, 316 F.3d 1066, 1069 (9th Cir. 2003). To be sure, the Supreme Court has recognized that "this common-sense principle of statutory construction is by no means invariable . . . and can be defeated by indications of legislative intent to the contrary or by obvious inferences from the structure and purpose of the statute." *United States v. Rodgers*, 461 U.S. 677, 706 (1983); *accord Photopaint Techs., LLC v. Smartlens Corp.*, 335 F.3d 152, 157 (2d Cir. 2003). But here all indications suggest that Rule 4(a)(6) is discretionary. *See* Fed. R. App. P. 4 advisory committee's note to the 1991 amendment (stating that rule "allow[s]" court to grant relief); Fed. R. Civ. P. 77 advisory committee's note to the 1991 amendment (stating that purpose is to "permit" court to grant relief).

[46] Dist. Ct. Dkt. 30.

[47] *Cf. Viacom Int'l, Inc. v. F.C.C.*, 672 F.2d 1034, 1040 (2d Cir. 1982) ("[T]he surest way to misinterpret a statute or rule is to follow its literal language without reference to its purpose."); *accord Local Union 36, Int'l Bhd. of Elec. Workers, AFL-CIO v. N.L.R.B.*, 631 F.3d 23, 27 (2d Cir. 2010).

of the rule was to ease strict sanctions on litigants who had failed to receive notice of the entry of judgment in order to file a timely notice of appeal, whether the fault lay with the clerk or other factors beyond the litigants' control, such as the Postal Service.[48]  There is nothing in the history of the rules, however, to suggest that the drafters sought to provide relief when the fault lies with the litigants themselves.[49]

To be sure, Rule 4(a)(6) was meant to permit relief from fault of litigants in one very specific sense—their failure to meet the "obligation to monitor the docket sheet to inform themselves of the entry of orders they wish to appeal."[50]  As the advisory committee noted:

> "Failure to receive notice may have increased in frequency with the growth in the caseload in the clerks' offices. The present strict rule imposes a duty on counsel to maintain contact with the court while a case is under submission. Such contact is more difficult to maintain if counsel is outside the district, as is increasingly common, and can be a burden to the court as well as counsel."[51]

We recognized this point in *Avolio v. County of Suffolk*,[52] our one prior occasion to consider the scope of a district court's discretion under Rule 4(a)(6).  The district court there had denied Rule 4(a)(6) relief to a litigant who otherwise had met the preconditions on the ground that appellants

---

[48]

*See Khor Chin Lim*, 683 F.3d at 380.

[49]

Indeed, in none of the many cases cited by the Advisory Committee did the failure to receive notice derive from the fault of the appellant.  *See* Fed. R. Civ. P. 77 advisory committee's note to the 1991 amendment.

[50]

*McAllan*, 248 F.3d at 53 (citing *O.P.M.*, 769 F.2d at 916).  Tellingly, *O.P.M.* was one of the cases cited by the committee in introducing Rule 4(a)(6).  *See* Fed. R. Civ. P. 77 advisory committee's note to the 1991 amendment.

[51]

Fed. R. Civ. P. 77 advisory committee's note to the 1991 amendment.

[52]

29 F.3d 50.

were "obligated to find out when judgment was entered, and counsel's failure to investigate when he did not receive notice of a judgment from the clerk, constitutes unexcusable neglect and does not warrant an extension of time in which to file a notice of appeal."[53] We vacated and remanded, observing that the district court's interpretation would "subvert the central purpose of subdivision (6)" of easing the sanctions on litigants in precisely appellants' position.[54] We concluded that although "[w]e need not determine to what extent discretion may lie in the district court under this rule . . .[,] a denial of relief may not be based on the concept of inexcusable neglect for not having learned of the entry of judgment. That concept has no place in the application of subdivision (6)."[55]

---

[53] *Id.* at 52 (internal quotation marks omitted).

[54] *Id.* at 53.

[55] *Id.* at 54; *see Nunley*, 52 F.3d at 798 (following *Avolio* to hold that "denial of relief cannot rest on a party's failure to learn independently of the judgment").

To be sure, the advent of electronic filing has undermined significantly the policy rationale for Rule 4(a)(6). It is no longer difficult for attorneys outside of the district to monitor the docket, and their doing so through the ECF system imposes little to no incremental burden on the courts. These considerations have prompted the Sixth Circuit in 2007 to decline to follow *Avolio* and *Nunley* in affirming the district court's denial of Rule 4(a)(6) relief on the sole ground that the appellant had a duty to monitor the docket. The court said:

> "[*Avolio* and *Nunley*] were decided long before electronic dockets became widely available which . . . do not even require an attorney to leave the seat in front of his computer to keep apprised of what is happening in his cases. An interpretation of Rule 4(a)(6) that allowed parties to ignore entirely the electronic information at their fingertips would severely undermine the benefits for both courts and litigants fostered by the CM/ECF system, including ease and speed of access to all the filings in a case."

*Kuhn*, 498 F.3d at 371 (internal quotation marks and citations omitted). We need not determine whether in light of the ease of electronic filing a district court now may deny relief on the basis of the appellant's failure to learn independently of the judgment, notwithstanding *Avolio*. No such denial of relief is presented for our review here, and as explained below, we need not rely on CNI's failure in this regard to conclude that the district court abused its discretion.

In holding that the court should not deny relief for a litigant's failure to learn independently of the judgment, we did not preclude district courts from considering the fault of a litigant that causes a failure of receipt. It would be curious, after all, not to consider indications that the litigant's own negligence caused the very problem that Rule 4(a)(6) was meant to ameliorate. As the D.C. Circuit has recognized,

> "Rule 4(a)(6), unlike Rule 4(a)(5), does not require that the party seeking to file an otherwise untimely notice of appeal show 'excusable neglect or good cause' or any other facts in mitigation of his tardiness. That is because, by supposition, his tardiness is not his fault. If in a particular case the movant is at fault—if the movant negligently failed to notify the clerk of his change of address, for example—then the district court may, in its discretion, deny relief under Rule 4(a)(6)."[56]

The structure of the overall procedural scheme reinforces the point. Rule 4(a)(5) specifically permits the district court to grant extensions of time in cases of fault—where any neglect by the litigant is "excusable." But the limitations of the relief afforded by Rule 4(a)(5) reflect a delicate policy balance. No matter how excusable the neglect, the litigant may seek an extension under Rule 4(a)(5) only by motion made within thirty days of the original deadline for filing the notice of appeal. And we have taken a "hard line" when determining whether neglect is excusable under Rule 4(a)(5).[57] The balance struck represents an appreciation for the "'sanctity of final

---

[56]

*Benavides*, 79 F.3d at 1214.

[57]

*Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 368 (2d Cir. 2003) (abuse of discretion to grant Rule 4(a)(5) relief when notice of appeal was filed two days late because movant's counsel relied on another lawyer's erroneous calculation of deadline); *see also Weinstock v. Cleary, Gottlieb, Steen & Hamilton*, 16 F.3d 501, 503 (2d Cir. 1994) (affirming denial of Rule 4(a)(5) relief even though untimeliness resulted from "trap" in federal rules that subsequently was eliminated). Other circuits also have taken a hard line in assessing such claims. *See Lowry v. McDonnell Douglas Corp.*, 211 F.3d 457, 463–64 (8th Cir. 2000) (holding that lawyer's miscalculation of thirty-day appeal period presented "garden-variety attorney inattention" and therefore reversing district court's grant of Rule 4(a)(5) relief); *see*

judgments in our federal judicial system'" and the public policy "'dictat[ing] that there be an end of litigation; that those who have contested an issue shall be bound by the result of the contest, and that matters once tried shall be considered forever settled as between the parties.'"[58] As we have recognized, "the legal system would groan under the weight of a regimen of uncertainty in which time limitations were not rigorously enforced—where every missed deadline was the occasion for the embarkation on extensive trial and appellate litigation to determine the equities of enforcing the bar."[59] We identify nothing in the purposes or history of Rule 4(a) to suggest that a neglectful litigant should be able to sidestep the rigorous requirements of Rule 4(a)(5) embodied in this balance simply because his neglect led also to the failure to receive notice of the judgment. We thus conclude that, at a minimum, a district court exercising discretion under Rule 4(a)(6) should give substantial weight to indications that the failure of receipt was the litigant's fault.

The district court below accepted CNI's argument that the clerk's office was at fault for the failure of receipt, stating:

> "The Clerk was supposed to use the information in the Court's Order [granting the *pro hac vice* motion] to create a new ECF profile, or, if the Clerk found that the attorney already had a profile in the system, to update the contact information on file. The Clerk failed to update Mullineaux's profile with the mailing and email address of his new firm."[60]

---

*also Silivanch*, 333 F.3d at 370 (citing additional cases).

[58] *Mendes Junior Int'l Co. v. Banco do Brasil, S.A.*, 215 F.3d 306, 314 (2d Cir. 2000) (quoting *Baldwin v. Iowa State Traveling Men's Assoc.*, 283 U.S. 522, 525 (1931)).

[59] *Silivanch*, 333 F.3d at 368.

[60] Dist. Ct. Dkt. 30, at 3.

We disagree. Section 2.1 of the S.D.N.Y. ECF Rules requires attorneys appearing in cases assigned to the ECF system, as was this one, to register as Filing Users and to provide, among other information, their email addresses.[61] The online registration form specifically requires the attorney to attest to the following:

> "By submitting this form electronically or in paper form, I hereby agree to abide by all Court rules, orders, policies and procedures governing the use of the electronic filing system. I also consent to service by electronic means in the circumstances permitted under those rules, orders, policies and procedures . . . . Also, as a participating attorney, I will promptly notify the court if there is a change in my personal data, such as name, e-mail address, firm address, telephone number, etc., *and I will update the appropriate data within the ECF system.*"[62]

Mr. Mullineaux therefore expressly accepted the obligation not only to notify the court if his email address changed, but also to update the ECF system himself.[63] The S.D.N.Y. ECF rules further made clear that Mr. Mullineaux's mere inclusion of his updated contact information in the body of his *pro hac vice* motion, which the district court then included in its order granting that *pro hac vice* motion, was wholly insufficient to discharge this obligation:

---

[61] *See* United States District Court for the Southern District of New York, Electronic Case Filing Rules & Instructions, April 4, 2011 edition*, § 2.1, *available at* http://www.nysd.uscourts.gov/ecf/rules_040411.pdf ["2011 ECF Rules"].

[62] *See* United States District Court for the Southern District of New York, E - Filing Registration Form, *available at* http://pearl.nysd.uscourts.gov/attyreg.pdf (emphasis added); *cf.* United States District Court for the Southern District of New York, Attorney Admission Instructions, *available at* http://pearl.nysd.uscourts.gov/admissions/admissions.pdf (requiring same attestation for attorneys seeking admission to the Southern District of New York bar).

[63] We may take judicial notice of district court records that indicate that Mr. Mullineaux registered as an ECF user in May 2006 with the wmmullineaux@flammlaw.com email address and that the registration form has contained the quoted language since well before that date. *See Scherer v. Equitable Life Assurance Soc'y of U.S.*, 347 F.3d 394, 402 (2d Cir. 2003) (taking judicial notice of state court records).

"**20.5  Am I required to notify the Court when my contact information changes?**

Yes.  Local Civil Rule 1.3 requires an attorney to notify the court when his/her contact information changes.  For information go to www.nysd.uscourts.gov or call the Attorney Admissions Clerk at (212) 805-0645.  Follow the steps below to change your contact information:

(a)     If you have a pending case provide notice to the Court and your adversary(s) by electronically filing a NOTICE OF CHANGE OF ADDRESS in each open case where you remain the attorney of record, or

(b)     If you do not have a pending case mail written notice of the change to: Attorney Admissions Clerk, United States District Court, 500 Pearl Street, NY, NY 10007.

**20.6  What if only my e-mail address has changed?**

You can make a simple change of your email address yourself on the ECF system.  To update your primary e-mail address click on Maintain Your Account and E-mail Information.  However, if your other contact information has changed you must follow the directions above to update your full contact information."[64]

---

[64]

United States District Court for the Southern District of New York, Electronic Case Filing Rules & Instructions, August 1, 2008 edition, *available at* http://www.nysd.uscourts.gov/ecf/ECF_rules_SDNY_Aug08.pdf.

Note that the most recent rules omit the part of § 20.5 beginning with the text "Follow the steps below . . . ." *See* 2011 ECF Rules, § 20.5.  The current website, however, contains a blow-by-blow explanation of the procedures to change one's contact information.  *See* Filing a Notice of Change of Address, http://www.nysd.uscourts.gov/atty_changeaddress.php (last visited Jan. 3, 2013).  These include *inter alia* a direction to the attorney to "[c]hange your e-mail address, if applicable" and the following instructions:

"To change the e-mail address:

1.     Log into the ECF System.
2.     Click on the Utilities menu option.
3.     Click on Maintain Your E-mail menu option, then
4.     Change your e-mail address."

It is undisputed that Mr. Mullineaux did not follow any of the procedures prescribed in the rules to update his contact information until finally changing his email address on November 9, 2010.

Thus, CNI's failure to receive notice was due entirely to Mr. Mullineaux's violation of the "clear dictates of a court rule,"[65] as the clerk's office properly transmitted notice of the entry of judgment to the email address in Mr. Mullineaux's profile, and it was plainly Mr. Mullineaux's sole obligation to keep that profile updated. Updating his profile would have taken exceedingly minimal diligence on Mr. Mullineaux's part, and he had every reason to be aware of any problem.[66] It is remarkable that Mr. Mullineaux could fail to take these most basic steps to receive proper notifications, while at the same time relying entirely on such notifications to ensure that he filed a timely notice of appeal. In these particular circumstances, we conclude that it was not within the district court's discretion to provide relief.[67] CNI's failure to receive Civil Rule 77(d) notice was entirely and indefensibly a problem of its counsel's making, and Rule 4(a)(6) was not designed to reward such negligence.[68]

---

[65] *Silivanch*, 333 F.3d at 366 (internal quotation marks omitted).

[66] There were numerous filings in the case in the two years between CNI's *pro hac vice* motion for Mr. Mullineaux and entry of judgment, including several filings by CNI itself. *See* Dist. Ct. Dkt. 1–24. All were sent only to the old email address.

[67] We need not consider the extent to which a district court has discretion to grant relief when the fault is less egregious than the circumstances presented here. In particular, we need not determine whether any fault on the part of the litigant that contributes to the failure to receive notice is disqualifying of Rule 4(a)(6) relief. Nor need we consider whether such a neglectful litigant must meet the Rule 4(a)(5) standard to prevail.

[68] We observe also that CNI's actions even once it became aware of the judgment—at the latest, on November 9, 2010—do not support its claim to relief. CNI's only action at that

We recognize that we appear to be the first court of appeals to identify an abuse of discretion in a district court's grant of a Rule 4(a)(6) motion where the preconditions for relief were met. The "responsibility for determining predicate compliance with [Rule 4(a)(6)] is vested in the district court"[69] and generally the district court will be best suited to weigh the competing factors relevant to a Rule 4(a)(6) motion.[70] But, as we have recognized, appellate courts do have a role to play with respect to a district court's exercise of discretion under Rule 4(a).[71] The text and history of Rule 4(a)(6) provide no indication that district court discretion was meant to be unbridled.

---

time was to file a clearly untimely notice of appeal, a "'nullity'" of no legal effect. *Silivanch*, 333 F.3d at 363 (quoting *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 61 (1982)). CNI then could have, but did not, make a motion for an extension of time under Rule 4(a)(5). It was only well over a month later, on December 16, 2010, after MCI filed a motion to dismiss before this Court, that CNI finally sought Rule 4(a)(6) relief before the District Court. The record contains no explanation for this delay.

To be sure, Rule 4(a)(6) was expressly amended in 2005 to make clear that the fourteen-day deadline to move for Rule 4(a)(6) relief is triggered only if and when the litigant receives formal notice of entry under Civil Rule 77(d), which as we have held did not occur here. *See* Fed. R. Civ. P. 4 advisory committee's note to the 2005 amendments. But it is equally clear that a district court may consider a litigant's diligence to some degree in its exercise of discretion under Rule 4(a)(6). A litigant who never receives Civil Rule 77(d) notice but becomes fully aware of the judgment a month after entry could not be entitled to a favorable exercise of discretion if without justification he fails to move for Rule 4(a)(6) relief until just before the 180-day deadline. *Cf. Harper v. Ercole*, 648 F.3d 132, 138 (2d Cir. 2011) ("'Equity always refuses to interfere where there has been gross laches in the prosecution of rights'" (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 419 (2005))). In any event, we note only that the delay does not help CNI's position; we need not determine to what extent this factor alone would have disqualified it from relief.

[69]

*Nguyen v. Southwest Leasing and Rental Inc.*, 282 F.3d 1061, 1066 (9th Cir. 2002).

[70]

*Cf. Silivanch*, 333 F.3d at 362 (holding that grant or denial of Rule 4(a)(5) relief "cannot be set aside by a reviewing court unless it has a definite and firm conviction that the court below committed a clear error of judgment in the conclusion that it reached upon a weighing of the relevant factors" (internal quotation marks omitted)).

[71]

*See id.* at 369–70 (holding district court's grant of Rule 4(a)(5) relief was an abuse of discretion, and citing similar cases from other circuits).

Rather, appellate review is necessary in light of the systemic importance of the "sanctity of final judgments" that the limitations on Rule 4(a) relief protect.[72]

In sum, we reaffirm that the Civil Rule 77(d) notice is meant "merely for the convenience of litigants"[73] and that litigants at all times have an "obligation to monitor the docket sheet to inform themselves of the entry of orders they wish to appeal."[74] Although Rule 4(a)(6) relief may be available to a litigant who fails to meet this obligation, such relief is discretionary and district courts should exercise their discretion mindful of the purposes and structure of Rule 4(a). Such considerations compelled the district court to deny relief here.[75]

---

[72]

*Mendes*, 215 F.3d at 314.

We have recognized that where "a matter is committed to the district court's discretion, ordinarily we might vacate the [order] and remand for reconsideration" after we identify error. *CP Solutions, PTE, Ltd. v. Gen. Elec. Co.*, 553 F.3d 156, 161 (2d Cir. 2009) (citation omitted). As noted above, it is unclear whether the district court thought that it did not have discretion to deny relief once the preconditions were met or, rather, the court understood it had such discretion but decided to exercise it favorably for unstated reasons. Remand may permit the district court to clarify its ground for decision in such circumstances. We are persuaded, however, that on the undisputed facts of this case the grant of relief simply is not "within the permissible range of choices" and thus remand is unnecessary. *Id.*

[73]

Fed. R. Civ. P. 77 advisory committee's note to the 1946 amendment.

[74]

*McAllan*, 248 F.3d at 53.

[75]

The dissent misconstrues our holding. We have not added an "unwritten requirement" barring relief to litigants at fault for their failures of receipt. Dissent Op. at 3. The dissent concedes that discretion may be abused by the grant of Rule 4(a)(6) relief—notwithstanding satisfaction of the explicit requirements—when the reasons to deny relief sufficiently outweigh the reasons to grant it. *Id.* at 2. We have concluded only that this is such a case.

Indeed, we expressly have left open the possibility that a district court permissibly may grant relief where the fault is less egregious than the circumstances presented here. This is not a case in which the fault could have been due to a "plausible misconstruction" of the rules, *Weinstock*, 16 F.3d at 503, or in which the litigant argued that the error was due to unique or extraordinary circumstances. Rather, in violation of a clear court rule, Mr.

*Conclusion*

The district court's order granting CNI's motion to reopen the time within which to appeal is **reversed**, and CNI's appeal from the district court's memorandum decision and judgment is **dismissed**.

---

Mullineaux failed to exercise minimal diligence to ensure receipt of notifications despite ample reason over two years to know that they were not being sent to his current email address.

In concluding that the rule nevertheless should permit relief in such circumstances, the dissent conflates the negligence of failing to monitor the docket with that of failing to update one's contact information. *See* Dissent Op. at 3. But the two are quite different. In partially alleviating the burden of monitoring the docket in the pre-ECF era, the federal rules relied on a basic—and substantially less burdensome—modicum of cooperation from litigants: providing the court with updated contact information to permit receipt of Civil Rule 77(d) notice. As discussed above, the history of Rule 4(a)(6) does not suggest an intent to relieve a litigant who egregiously fails to satisfy that minimal responsibility and thus causes the very problem the rule sought to address; the committee notes cite no crisis of nomadic lawyers who could not have been expected to apprise the court of their whereabouts. Moreover, contrary to the dissent's implicit suggestion, *see id.*, the advent of the electronic era, which has made both monitoring the docket and updating contact information easier than ever, has not increased such a litigant's claim to relief.

GERARD E. LYNCH, *Circuit Judge*, dissenting:

Federal Rule of Appellate Procedure 4(a)(6) ("Rule 4(a)(6)") was designed to grant district courts the discretion to allow parties to file untimely notices of appeal under certain circumstances, notwithstanding neglect of their obligation to monitor court dockets to be aware of developments in their cases. In this case, as the majority rightly holds, appellant satisfied the explicit requirements of the Rule, such that the district court had discretion to grant the requested relief. Because the district court did not act arbitrarily or without reason in granting appellant's motion, I would affirm its decision.

The text of Rule 4(a)(6) states that a district court "may" reopen the time to file an appeal "only if" three conditions are satisfied. The district court, having found those conditions satisfied, exercised its discretion to show the appellant mercy. The majority opinion recognizes that the district court's analysis of Rule 4(a)(6)'s conditions was correct. In so doing, the majority follows the Seventh Circuit in holding that Rule 4(a)(6)(A)'s requirement that the moving party not "receive notice" means actual receipt rather than service. I agree that this is the more natural reading of the Rule, and I therefore fully concur in the majority's analysis of Rule 4(a)(6)'s explicit requirements.

Satisfaction of the conditions of Rule 4(a)(6) does not require that relief be granted. Because the Rule provides that, when the conditions are met, the district court "may" – not "must" – reopen the time to file an appeal, the district court has discretion whether to grant the motion or not. Where there is discretion, there is the possibility of an abuse of that discretion. I therefore also agree with the majority that satisfaction of the

1

Rule's explicit requirements, standing alone, does not render a district court's decision immune from appellate review. There may well be cases in which the Rule's requirements are met but the district court's decision is arbitrary or irrational, or in which the reasons either to grant or deny relief so lopsidedly favor one side as to render the opposite decision an abuse of discretion. See Avolio v. County of Suffolk, 29 F.3d 50, 54 (2d Cir. 1994) (holding that when the three requirements of Rule 4(a)(6) are met, a district court abuses its discretion by denying relief if that denial contradicts the purposes of the Rule) Nevertheless, I disagree that this case is one where granting relief is not "within the range of permissible choices." CP Solutions, PTE, Ltd. v. Gen. Elec. Co., 553 F.3d 156, 158 (2d Cir. 2009).

The majority would require a district court to "give substantial weight to indications that the failure of receipt was the litigant's fault," because neglectful litigants would otherwise be able to sidestep the strict time-bar of Federal Rule of Appellate Procedure 4(a)(5). Maj. Op. at 18. Note, however, that the Court does not remand the case for the district court to reconsider its decision, giving explicit attention to this factor. Instead, it categorically holds that the district court abused its discretion by awarding relief because appellant was at fault by failing to update its counsel's e-mail address. But by finding that the district court abused its discretion for no reason other than that the appellant was to blame for its failure to receive notice of the adverse judgment, the majority effectively adds an additional condition to Rule 4(a)(6) that does not appear in the text of the Rule itself. According to the majority opinion, district courts may *not* grant

2

relief, despite the contrary text of the Rule, when the conditions of the Rule are satisfied, unless the litigant was without fault.

The unwritten requirement the majority reads into Rule 4(a)(6) is at odds with the intended purpose of the Rule. The Rule was designed to allow judges to relieve litigants of a type of negligence: failure to monitor the docket. And in today's world, that means it allows judges to excuse failure to monitor the electronic docket.

In this case, appellant's counsel's first mistake was failing to check that docket on a regular basis. His second mistake was failing to update his attorney profile in the district court's electronic notification system on a regular basis. But this second mistake is simply a more specific example of the kind of negligence that, as the majority acknowledges, Rule 4(a)(6) is intended to excuse. See Maj. Op. at 15-16. A rule that gives district courts discretion to excuse failure to use the electronic monitoring system at all is surely broad enough to excuse failure to use that system correctly.

I am sure there are some cases in which granting leave to reopen the time to file an appeal would be an abuse of discretion. Notably, however, I am not aware of any cases, and the majority cites none, in which a court of appeals has found that a grant of this relief, where the Rule's conditions were satisfied, was such an abuse. This garden-variety case of attorney error hardly seems the place to start. Although the district court could have better stated its reasons for exercising its discretion in the way that it did, those reasons are not difficult to discern. There is no indication, for example, that the appellee was prejudiced in any way by the delayed filing of the notice of appeal, or that the

3

appellant acted in a reckless or malicious way. This is not even a case in which a member of the district court's bar, who regularly appears before the court, failed to comply with the requirement of keeping the court advised of his address; rather, counsel is an out-of-state lawyer, admitted *pro hac vice*, who carelessly (but perhaps understandably) either forgot that the e-mail address he provided in his only previous appearance in the district was now outdated, or believed that his motion for admission on this occasion, which provided his current e-mail address, was sufficient notice to the Clerk of Court of his new contact information. This was an error, but it does not seem to be one that should terminate his client's appellate rights, or preclude him and his client from taking advantage of a rule the entire point of which is to allow a district court to excuse errors of this very type.

The rules ought to be enforced, and lawyers are responsible for learning the correct procedures for practicing before the federal courts. But the primary responsibility for deciding when to excuse non-compliance under the particular circumstances specified in this Rule properly lies with the district courts. The district court obviously decided that it was better to permit the losing party to obtain review of the judgment, rather than to give that party (whose argument on the merits appears to me unlikely to succeed in any event) the impression that substantive rights in the federal courts are forfeit to procedural niceties or minor mistakes by lawyers – or, worse, to invite collateral malpractice litigation in a case that this Court could surely have resolved more easily and expeditiously on the merits than by a lengthy opinion addressing a procedural issue more difficult than the merits of the appeal itself.

In light of the merits of the case, I do not think that the majority works an injustice, and I fully respect my colleagues' insistence that lawyers carefully comply with rules that are after all designed to make it simple and automatic for them to receive notice of developments in their case. Nevertheless, I would defer to the good judgment of an experienced district judge in exercising a discretion granted to him by the rules, in a case in which that discretion cannot fairly be said to have been abused. I therefore respectfully dissent.